UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**FIELD OF DREAMS TREE FARM, INC.**,

Debtor.

Case No. **12-60074-11**

# MEMORANDUM of DECISION

At Butte in said District this 28th day of March, 2012.

In this Chapter 11 bankruptcy, after due notice, the Court held a hearing on March 13, 2012, in Billings on the Motion for an Order: (1) that the Automatic Stay is not Applicable, or, in the alternative, (2) to Modify the Stay, or (3) for Adequate Protection filed by First Interstate Bank ("FIB") on January 30, 2012, which Motion was supplemented on March 5, 2012, by an Amended Motion for an Order: (1) that the Automatic Stay is not Applicable, or, in the alternative, (2) to Modify the Stay, or (3) for Adequate Protection. The Amended Motion sets forth an additional reason why the Court should grant FIB its requested relief. Hearing was also held March 13, 2012, in Billings on Debtor's Motion for Use of Cash Collateral filed March 2, 2012. Debtor was represented at the hearing by Gary S. Deschenes of Great Falls, Montana; First Interstate Bank was represented by James A. Patten of Billings, Montana. Drew Smith, David Thor, James Prchal, Nicole Wood, Susan Smith and Jonine Smith testified. First Interstate Bank's Exhibits 1 through 21, 24, 26 and 27 were admitted into evidence, as were Debtor's Exhibits 2, 4 and A. At the conclusion of the hearing, the Court closed the record and took the matter under advisement. On March 13, 2012, following the hearing, FIB filed a "Memorandum of Facts Developed at

1

Hearing on Motion for Relief From Stay and Motion for Use of Cash Collateral," to which Debtor filed an objection. FIB's Memorandum was filed after the record on the above matters was closed. Thus, the Court will not consider FIB's Memorandum. This Memorandum of Decision includes the Court's findings of fact and conclusions of law.

## FACTS

Debtor executed a Promissory Note in favor of FIB on March 28, 2007, in the principal amount of $671,735.61. Loan No. 122168016. The Note is secured, pursuant to Deeds of Trust, by real property located at 3250 and 3010 Hannon Road, Billings, Montana, and all Inventory, Chattel Paper, Accounts, Equipment and General Intangibles as described more fully in a Commercial Security Agreement dated March 28, 2007. The March 28, 2007, obligation was scheduled to mature March 28, 2019. On March 29, 2010, Debtor and FIB entered into a Change in Terms agreement to defer the payments due for January, February and March of 2010. The maturity date of March 28, 2019, remained the same. As set forth in the Change in Terms, the amount owed as of March 29, 2010, was $586,092.31. Pursuant to a Judgment entered October 18, 2011, by District Judge Mary Jane Knisely in Cause No. DV 11-0549, Montana Thirteenth Judicial District, Yellowstone County ("Judgment"), as of October 17, 2011, $588,819.40 was owed on the foregoing obligation with interest accruing at the rate of $134.21 per day.

Debtor also executed a second Promissory Note in favor of FIB on March 28, 2007, in the principal amount of $75,463.00. Loan No. 1224168007. The second loan is also secured by the real property located at 3250 and 3010 Hannon Road and all Inventory, Chattel Paper, Accounts, Equipment and General Intangibles. That loan matured March 28, 2008. The foregoing loan was eventually paid off with a new loan dated January 6, 2011, in the principal amount of $73,224.94,

2

which loan matured April 30, 2011.  Loan No. 1223040011.  Pursuant to the Judgment, as of October 17, 2011, Debtor owed $77,299.14 on the foregoing loan, with interest accruing at the rate of $14.0431 per diem thereafter.

As explained in the Judgment dated October 18, 2011, FIB, Debtor, Jonine K. Smith and Ernest V. Smith stipulated to the amounts owed as discussed above, plus reasonable attorney's fees and costs in the amount of $8,916.00.  The parties further stipulated that FIB could foreclose on certain described real property, consisting of Parcels A (Tract 3A) and B (Tracts 4 and 5), commonly known as 3010 Hannon Road, and Parcel C (Tracts 1 and 2), commonly know as 3250 Hannon Road, and all personal property identified in the Judgement.  The Judgment also provides that some of the inventory "consists of growing plants located on the real property.  For that reason, the real estate may be sold before the personal property.  If there are insufficient proceeds from the sale of the real estate to satisfy the judgment, the inventory and then other personal property is to be sold."  In the event the proceeds from the sale of the real and personal property were inadequate to satisfy Debtor's obligation to FIB, the Judgment ordered " a deficiency judgment for the balance against Defendants Field of Dreams Tree Farm, Inc., Ernest V. Smith and Jonine K. Smith."

Between the date of the Judgment and the filing of the bankruptcy case, FIB asserts it incurred additional attorney's fees and costs of $2,713.28.  In its motion, FIB maintains it was owed $691,535.36 as of the Debtor's petition date.  Debtor does not dispute the amount owed.

The real property at issue is described as:

> Parcel A: (Tract 3A) That part of SE 1/4 of Section 10, Township 1 South, Range 26 East, of the Principal Montana Meridian, in Yellowstone County, Montana, described as Tract 3A, of Amended Tract 3 of Certificate of Survey No. 214 on

3

file in the office of the Clerk and Recorder of said County, under Document No. 1471926;

Parcel B: (Tract 4 and 5) That part of S1/2W1/2SE1/4 of Section 10, Township 1 South, Range 26 East, of the Principal Montana Meridian, in Yellowstone County, Montana, described as Tracts 4 and 5 of Certificate of Survey No. 214 on file in the office of the Clerk and Recorder of said County, under Document No. 450404;

Parcel C: (Tracts 1 and 2) That part of NW1/4SE1/4 of Section 10, Township 1 South, Range 26 East, of the Principal Montana Meridian, in Yellowstone County, Montana, described as Tracts 1 and 2 of Certificate of Survey No. 1263 on file in the office of the Clerk and Recorder of said County, under Document No. 913878 (collectively "Real Property").

The aforementioned real property is owned by Ernest V. Smith and Jonine K. Smith, individually. Ernest V. Smith and Jonine K. Smith jointly own a 100% interest in the Debtor. The Debtor operates its business on the real property owned by Ernest V. Smith and Jonine K. Smith. Debtor's counsel conceded at the hearing that the automatic stay does not apply to the real property owned by Ernest V. Smith and Jonine K. Smith. Thus, FIB may proceed under the terms of the October 18, 2011 Judgment, which provides for the sale of the real property described above.

Notwithstanding the stipulated Judgment, which directs the order in which assets are to be liquidated, Debtor opposes FIB's motion to proceed against the personal property owned by Debtor, as listed in the Judgment, arguing FIB is adequately protected by real property owned by Ernest V. Smith and Jonine K. Smith. Because Debtor argues FIB is adequately protected, Debtor does not offer to make any adequate protection payments to FIB and in fact, based upon Debtor's allegation that FIB's collateral has a value of $874,590, Debtor seeks permission to use all cash collected from sales and/or collection of accounts receivable during the next six months to fund its operations. During that six month period of time, Debtor does not propose making any

payments to FIB. FIB opposes Debtor's request to use cash collateral.

David Thor ("Thor") is a certified real estate appraiser, who devotes fifty percent of his time to commercial appraisals in the Billings areas. In August of 2011, Thor appraised the property located at Hannon Road, consisting of approximately 11.88 acres and the improvements thereon. The real property consists of three separate parcels of land. The first parcel is approximately 5 acres in size and is zoned Controlled Industrial. The second parcel is approximately 3.43 acres. The third parcel is approximately 3.45 acres. The second and third parcels are zoned Residential 15,000.[1] Considering the highest and best use for the subject property and using both the cost approach and the sales comparison approach, Thor concluded the 11.88 acres of real property owned by Ernest V. Smith and Jonine K. Smith has an "as is" market value, as of August 26, 2011, of $238,000 to $250,000, with an estimated marketing time of one year or more. Thor conceded his values might be a little low as of the hearing date because he has seen a little movement in the market since August of 2011 when he did his appraisal. Given some movement in the market, he opined that the value could be as high as $300,000.

Drew Smith ("Smith") is a commercial real estate broker. Given his commercial background, Smith was most knowledgeable about the 5 acre parcel zoned Controlled Industrial. Smith thought the commercial property was worth about $1 per square foot, or somewhere in the neighborhood of the low $200,000 range for the entire 5 acre parcel. Smith did not know the value of the property zoned Residential 15,000, but speculated that if the zoning was changed to Controlled Industrial, the entire 11.88 acres might be worth $400,000 to $500,000.

---

[1] According to Thor's appraisal, "Residential 15,000 is a Yellowstone County zoning intended to provide for low density, single family residential development in areas where there may or may not be public water and sewer."

James Prchal ("Prchal") is a nursery manager at Good Earthworks in Billings. FIB hired Prchal to visit Debtor's business location to count and value Debtor's inventory. Prchal, together with Nicole Wood, a commercial loan officer at FIB, counted and assessed the trees and other inventory at Debtor's place of business. Prchal did not count or value Debtor's perennials or shrubs, which were under a winter blanket. Based upon his assessment, Prchal concluded Debtor's inventory, excluding the perennials and shrubs, had a retail value of $315,022.50, a parkgrade value[2] of $189,013.50 and a lump sum value of $31,500.

In its schedules filed February 17, 2012, Debtor values its trees, nursery stock, rock and pottery at $250,000. Notwithstanding the value contained in the schedules and contrary to Prchal's testimony, Jonine Smith testified she did a physical inspection and assessment of Debtor's inventory and concluded Debtor's inventory had a wholesale value of $652,750.95 and a retail value of $784,727.25, which included perennials with a wholesale value of $21,540.75 and a retail value of $36,527.89, and deciduous shrubs with a wholesale value of $40,755.00 and a retail value of $52,672.00.

Neither party assigned a value to Debtor's machinery and equipment, but according to the schedules filed February 17, 2012, Debtor's office equipment is valued at $1,370, a 2011 V Plow Hiniker is valued at $5,000, 2 sheds are valued at $1,000 and Debtor's other machinery and equipment is valued at $73,590. Debtor asserts the value of the machinery and equipment is not depreciating. FIB did not offer any evidence to contradict such assertion by Debtor. Based upon Debtor's schedules, the value of the aforementioned machinery, equipment and other personal

---

[2] Prchal explained that parkgrade value was the value he assigned to inventory that did not measure up to industry standards.

property is set at $80,960.

As for its request to use cash collateral, in a cash flow projection attached to its motion, Debtor projects total gross income of $39,000 in March, $48,600 in April, $110,000 in May, $125,000 in June, $111,000 in July and $88,000 in August, for a total of $521,600 during the next six months. In its schedules filed February 17, 2012, Debtor discloses that its total gross income for the 12 months prior to filing was $432,000, or $36,000 per month. Debtor's estimated average future gross monthly income was $36,000. After the record was closed at the hearing, Debtor filed an amended Business Income and Expense summary on March 14, 2012, asserting its gross business income for the 12 months prior to filing was $616,402.76, or $51,366.90 per month.

In the original Business Income and Expense summary filed February 17, 2012, Debtor estimates that its future expenses would total $38,670 per month. In the amended summary filed March 14, 2012, Debtor's estimated monthly expenses increased to $43,394.00. The foregoing expense projections do not include non-cash expense items such as depreciation. The expense projections also do not include any payment to FIB, even though under the Judgment, FIB would be entitled to additional interest of $27,278 during the 6 month period. Per the cash flow projection attached to its motion to use cash collateral, Debtor projects monthly expenses of $24,175 in March, $43,791 in April, $83,591 in May, $111,191 in June, $64,091 in July and $63,291 in August, for a total of $390,130 or an average of $65,021.67 per month.

Debtor's schedules reflect Debtor had cash, either on hand or in a checking account, totaling $1,534.30 as of January 20, 2012. Debtor's balance sheet shows a cash balance of $-2,120.33 as of January 31, 2012. It appears Debtor's accounts receivable balance was $26,188.46 as of January 31, 2012. Debtor's net income from January 20, 2012, to January 31, 2012, was $-

7

6,805.60.

As of February 29, 2012, Debtor's cash balance was $-887.66 and its accounts receivable balance was $18,081.03.  Debtor's net income for the month of February was $-1,914.54.  Jonine Smith concedes Debtor has used, since January 20, 2012, approximately $5,930.49 of FIB's cash collateral, without FIB's consent and without authorization from this Court.  Jonine Smith also testified that she and her husband have had to inject cash into Debtor's operations during the past few years.  Such statement implies that historically, Debtor's expenses have exceeded its revenues.

Finally, Jonine Smith argued that because of the potential deficiency judgment granted FIB against Jonine and Ernest Smith, FIB can also look to the Smiths' other real estate, including their home, a rental property and a home occupied by Jonine Smith's sister-in-law, for payment of the obligations owed by Debtor.  Debtor contends FIB's motions should be denied because Jonine and Ernest Smith have equity in the rental property and in the home occupied by Jonine's sister-in-law.  With respect to the other property owned by the Smiths, Jonine testified that she and her husband paid $680,000 for their home at an unspecified time.  The Smiths' owe $539,000 on the home.  Jonine Smith gave no opinion as to the home's present value and it is not clear whether any equity in the home would be protected by the homestead exemption.

The Smiths also own a rental property they purchased for $25,000.  The Smiths have made improvements to the rental property, but owe $40,000 to $44,000 on the property.  Jonine testified the rental property has a value of $75,000, but failed to provide any basis for such opinion.  The Smiths also own a home at 310 Lavender in Billings, which they bought 8½ years ago for $120,000 to $125,000.  Ernest Smith's sister, Susan Smith, lives in the home.  The Smiths owe

$110,000 on the home. Jonine stated the home is now worth $250,000, but again, she provided no facts to support her assertion that the home is worth $250,000.

## DISCUSSION

As previously noted, Debtor's counsel agrees that the automatic stay does not apply to the real property on which Debtor operates its business because the property is owned by Ernest V. Smith and Jonine K. Smith, who are not debtors in bankruptcy. Thus, FIB's motion for an order holding that the automatic stay does not apply to real property is granted.

As for the only other property of the bankruptcy estate[3], FIB's motion to modify stay is based upon 11 U.S.C. § 362(d)(1), which allows for the granting of relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest[.]" This Court explained the standard for modifying the stay for "cause" under § 362(d)(1) in *In re Westco Energy, Inc.*, 18 Mont. B.R. 199, 211-12 (Bankr. D. Mont. 2000):

> Section 362(d), however, provides that, "[on request of a party in interest and after notice and a hearing, the court shall grant relief from the [automatic] stay" in three instances. The subsection relevant to these proceedings is § 362(d)(1), which allows for the granting of relief from the automatic stay "for cause".[4] What

---

[3] FIB identifies the other property of the bankruptcy estate as a 2001 Heatmore wood boiler; 1999-200 gallon pump with sprayer; 1999 John Deere 240 Skidsteer; 2002 John Deere 250 Skidsteer; 2002 Toro Twister; 2003 Turf Sportsman 1000 Tera; 2005 John Deere 325 Skidsteer Loader; 2004 Sears Craftman Tractor; 2005 Kubota No. 39258; 2007 Sears Lawn Tractor; Roketaltz 200 ATV with Snowplow; 2006 Polaris Ranger with Snowplow; office equipment and furniture; ball cart; drill; weed wacker; nursery forks; shade structure; trailers; spray; soil mixers; welders; wood chippers; converyor; teraplane; storage trailer; and nursery inventory.

[4] Section 362(d)(1) provides:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section , such as by terminating, annulling, modifying, or conditioning such stay–

> constitutes cause for purposes of § 362(d) "has no clear definition and is determined on a case-by-case basis." *Tucson Estates*, 912 F.2d at 1166. *See also Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In the Matter of Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986) (Relief from the automatic stay may "be granted 'for cause,' a term not defined in the statute so as to afford flexibility to the bankruptcy courts.").

Section 362 vests this Court with wide latitude in granting appropriate relief from the automatic stay, and a decision to lift the automatic stay is within a bankruptcy court's discretion, and subject to review for an abuse of discretion. *In re Delaney-Morin*, 304 B.R. 365, 369-70 (9th Cir. BAP 2003); *In re Leisure Corp.*, 234 B.R. 916, 920 (9th Cir. BAP 1999); *In re Plummer*, 20 Mont. B.R. 468, 477-78 (Bankr. D. Mont. 2003); *Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 108-109 (9th Cir. 1995).

The burden of proof under subsection (d) on the issue of the debtor's equity in property rests with the moving party, while the party opposing such relief has the burden of proof on all other issues. 11 U.S.C. § 362(g). Therefore, FIB has the burden of proof on the issue of the Debtor's equity.

With respect to FIB's motion based on § 362(d)(1) for "cause," as the party seeking relief FIB must first establish that cause exists for relief under § 362(d)(1). *United States of America v. Gould (In re Gould)*, 401 B.R. 415, 426 (9th Cir. BAP 2009), citing *Duvar Apt., Inc. v. FDIC (In re Duvar Apt., Inc.)*, 206 B.R. 196, 200 (9th Cir. BAP 1996). Once a *prima facie* case has been established, the burden shifts to the debtor to show that relief from the stay is not warranted. *Id.*

Debtor owed FIB $691,535.36 as of January 20, 2012. If FIB is oversecured, as Debtor maintains, FIB is also entitled to interest of $148.25 per diem, which additional amount totals

---

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest[.]

$9,043.25 as of March 21, 2012. In other words, as of March 21, 2012, FIB is owed $700,578.61. The only items of collateral owned by Debtor are cash, accounts receivable, inventory, machinery and equipment. The parties appear to agree that the value of Debtor's machinery, equipment, office equipment and sheds total $80,960. Although Debtor had, according to its schedule B, cash or cash equivalents on hand as of January 20, 2012, totaling $1,415.50, Debtor's balance sheet as of February 29, 2012, shows Debtor had a negative cash balance of $887.66. Debtor's schedule B also showed accounts receivable totaling $29,530.13 as of January 20, 2012, but as of February 29, 2012, Debtor's accounts receivable were reduced to $18,081.03. Based upon testimony presented at the hearing, the value of Debtor's accounts receivable is suspect at best.

Next, Debtor maintains in its schedules that its inventory is worth $250,000. In its balance sheet as of February 29, 2012, it appears Debtor values its inventory, per accounts 1100 and 1120, at $1,454.54. In a detailed summary, Prchal values Debtor's inventory at $189,013.50 to $315,022.50. Prchal concedes he did not count or value any items that were under the winter blankets.

In stark contrast to Debtor's balance sheet, schedule B, and Prchal's opinion of value, Jonine asserts Debtor's inventory has a value of $652,750.95 to $784,7287.25. Jonine did not provide any explanation for the large discrepancy between the value asserted in Debtor's schedule B or balance sheet and her estimate of the value of inventory for purposes of the hearing. All matters considered, the Court finds Jonine's opinion regarding the value of Debtor's inventory assets overstated, unsupported and self-serving. The most reliable evidence regarding the value of Debtor's inventory was that given by Prchal. Unfortunately, Prchal did not count or value Debtor's perennials and shrubs and Jonine's wholly unrealistic valuation is rejected by the Court.

This leaves the Court tasked, with limited information, to ascertain the value of Debtor's perennials and shrubs. Jonine's retail valuation of Debtor's inventory, excluding perennials and shrubs, was $695,527.36, or approximately 55% higher than Prchal's valuation. Applying that same ratio to Jonine's valuation numbers for the perennials and shrubs results in a reasonable value for the perennials and shrubs of $40,407.56. Adding the value of the perennials and shrubs to Prchal's value of $315,022.50 for all other inventory, results in a total inventory number of $355,430.06, which number the Court adopts for purposes of this Order.

As of January 20, 2012, FIB was owed $691,535.36. The foregoing amount is secured by Debtor's assets, which according to the above total $436,390.06 ($355,430.06 attributable to inventory and $80,960 attributable to machinery, equipment, office equipment and sheds). As the foregoing reflects, Debtor owes FIB substantially more than the value of its collateral. Consequently Debtor has no equity in FIB's collateral and therefore, absent evidence to the contrary, FIB is entitled to relief from the automatic stay under 11 U.S.C. § 362(d)(1).

Even though Debtor owed FIB $691,535.36 as of January 20, 2012, and even though the collateral owned by Debtor has a value of $436,390.06, Jonine Smith and Debtor's counsel argue that FIB is adequately protected because it also has a security interest in the real property on which Debtor operates its business as reflected in the Promissory Notes, Deeds of Trust and Judgement, and also has a judgment lien against any other real property owned by Ernest and Jonine Smith by virtue of the potential, but as of yet, undetermined October 18, 2011, deficiency judgment. According to the October 18, 2011 Judgment, FIB is to liquidate the real property on which Debtor operates its business first. If the proceeds from liquidation of the real property do not pay FIB's obligation in full, FIB may then liquidate the personal property owned by Debtor. It

is only after FIB has liquidated the real property upon which Debtor operates it business and all Debtor's personal property that FIB will know the extent of a deficiency judgment, if any, against the Debtor and the Smiths.

The Court agrees that FIB voluntarily took a security interest in the property on Hannon Road and in Debtor's personal property and it is proper to consider not only the value of Debtor's personal property, but also the property on Hannon Road. The evidence regarding the value of the real property included Thor's appraisal, the partial opinion of Drew Smith and the opinion of Jonine. Thor is a licensed and experienced appraiser. Neither Drew Smith nor Jonine are appraisers. However, for purposes of valuation, an owner is competent to give his or her opinion on the value of his or her property, most often simply by stating the conclusion without stating a reason. *See* Hon. Barry Russell, BANKRUPTCY EVIDENCE MANUAL, 2010 ed. § 701:2; *South Central Livestock Dealers, Inc. v. Security State Bank of Hedley, Tex.*, 614 F.2d 1056, 1061 (5th Cir. 1980). While a debtor's estimate of value may be acceptable in certain cases, the Court may give little weight to an opinion if not based upon sufficient facts. *In re Plummer*, 20 Mont. B.R. 468, 478 (Bankr. D. Mont. 2003); *In re Hungerford*, 19 Mont. B.R. 103, 118-19 (Bankr. D. Mont. 2001). Jonine provided no detail about the facts upon which she based her value opinions and Drew Smith was only able to give an opinion of value as to the property zoned Controlled Industrial. Drew Smith gave an opinion as to value if the zoning of the remaining parcels was switched from Residential 15,000 to Controlled Industrial, but Debtor offered no evidence on whether a zoning change is possible or feasible.

Thor provided the most complete and persuasive evidence as to the value of the real property. Thor's valuation places the value of the property between $238,000 and $250,000, but

testified that if he considered only the most recent sale of a 2.6 acre similar parcel of land, his value could go as high as $300,000. Considering Thor's testimony that his appraisal might be a bit low given recent activity in the market, the Court sets the value of the real property at $300,000.

Considering the value of the real property, FIB's collateral has a value of $736,390.06 ($300,000 attributed to the real property, $80,960 attributed to machinery and equipment and $355,430.06 attributed to inventory). As of Debtor's petition date, FIB was owed $691,535.36, which leaves Debtor and the Smiths with $44,854.70 of equity in FIB's collateral. However, if the Court factors in interest, FIB is owed $700,430.36 as of March 20, 2012, which reduces Debtor and the Smiths' equity in FIB's collateral to $35,959.70, or roughly 5 percent of the amount owed. Debtor argues that the stay should remain in place, that adequate protection payments to FIB are not necessary, and that Debtor should be allowed to use FIB's cash collateral during the next six months without any payments to FIB. Interest during the next six months will total $27,055.63, bringing the total amount owed to $727,485.99, and reducing the equity in FIB's collateral to a mere $8,904.07.

Not to be dissuaded, Debtor counters that the property is necessary for Debtor's effective reorganization and that FIB can, because of the October 18, 2011 Judgment, look to other real estate owned by the Smiths for payment of the Judgment. First, FIB is not seeking relief under 11 U.S.C. § 362(d)(2) and thus, whether the property is necessary for Debtor's effective reorganization is not a factor. Moreover, Debtor has not offered to make any type of adequate protection payment to FIB and in fact, has used $5,930.49 of FIB's collateral since January 20, 2012, without permission from either FIB or this Court. Debtor, however, is asking this Court to

14

look beyond the motion before the Court. "To allow a relief from stay hearing to become any more extensive than a quick determination of whether a creditor has a colorable claim would turn the hearing into a fullscale lawsuit . . . and would be inconsistent with this procedural scheme." *Grella*, 42 F.3d at 33.

In *In re Luz Intern., Ltd.*, 219 B.R. 837, 843 (9th Cir. BAP 1998), the BAP reversed a bankruptcy court's granting of a setoff in the course of granting a motion to modify stay. The BAP explained that the hearing on a motion to modify stay is a summary proceeding in which a court should seek only to determine whether the party seeking relief has a colorable claim to property of the estate, and the expedited nature of the hearing "limits the court's ability to make a full adjudication of the merits of the parties' claims. *Id.* at 842. The BAP recently cited *Luz* in holding "that a party seeking stay relief need only establish that it has a colorable claim to enforce a right against property of the estate." *Veal* at __; *United States v. Gould (In re Gould)*, 401 B.R. 415, 425 n.14 (9th Cir. BAP 2009); *Grella*, 42 F.3d at 32.

FIB moves for relief from the stay under § 362(d)(1) for "cause" based upon the lack of adequate protection, lack of post-petition payments, and Debtor's unauthorized use of cash collateral. Based on the evidence and the minimal equity in the collateral as found above, this Court finds that FIB has made a colorable claim and exercises its discretion and grants FIB's motion to modify stay. *Mataya v. Kissinger*, 72 F.3d at 108-109. The Court finds that Debtor has not satisfied Debtor's burden of proof to show that relief from the stay should not be granted for "cause" under § 362(d)(1).

The Court's ruling above renders Debtor's motion to use cash collateral moot. The Court would note, however, that Debtor requests permission to use cash collateral in this case pursuant

15

to 11 U.S.C. § 363(c)(2), yet offers FIB no adequate protection. This Court discussed the concept of adequate protection in *In re WRB West Associates Joint Venture*, 106 B.R. 215, 219-20 (Bankr. D. Mont. 1989):

> In a classic sense, adequate protection payments should be applied to compensate a secured creditor for any diminution in the value of collateral as a result of use, depreciation, destruction or other caused reduction in value. 11 U.S.C. § 361; 11 U.S.C. § 363(e); *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., (In re Timbers of Inwood Forest Assocs., Ltd.)*, 793 F.2d 1380, 1412 n. 57 (5th Cir.1986) (collecting supporting cases), *aff'd, United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, [484] U.S. [365], 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); *General Elec. Mortgage Corp. v. South Village, Inc. (In re South Village, Inc.)*, 25 B.R. 987, 994 (Bkrtcy.D.Utah 1982) ('adequate protection was protection ... against depreciation of the collateral when it erodes the allowed secured claim.')."

[*Matter of Kain*, 86 B.R. 506, 511, 513 (Bankr. W.D. Mich. 1988)]

On the issue of adequate protection required by § 363(d) and (e), *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir.1987) holds:

> "[2, 3] In recognition of the powers created in bankruptcy law to adjust debts and creditors' interest, Congress realized the need to protect creditors from unfair treatment. Hence, it codified the concept of adequate protection into the several aggressive remedies available to debtors and bankruptcy trustees. *See 2 Collier on Bankruptcy* ¶ 361.01[1] (15th ed. 1979). The whole purpose in providing adequate protection for a creditor is to insure that the creditor receives the value for which the creditor bargained prebankruptcy. House Rep. No. 95-595, 95 Cong., 2d Sess. 53, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6295. In determining these values, the courts have considered 'adequate protection' a concept which is to be decided flexibly on the proverbial 'case-by-case' basis. *In re Martin*, 761 F.2d 472 (8th Cir.1985); *In re Monroe Park*, 17 B.R. 934 (D.C.Del.1982). Since 'value' is the linchpin of adequate protection, and since value is a function of many factual variables, it logically follows that adequate protection is a question of fact. *In re Martin*, 761 F.2d at 472; *In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017 (11th Cir.1984); *In re Bank Hapoalim B.M., Chicago Branch v. E.L.I.*, Ltd., 42 B.R. 376 (D.C.N.D.Ill.1984); *Brookfield Production Credit Association v. Borron*, 36 B.R. 445

>    (D.C.E.D.Mo.1983), *aff'd*, 738 F.2d 951 (8th Cir.1984)."
>
> *In re Mellor*, 734 F.2d 1396, 1400 (9th Cir.1984) addressed the issue on a basis of "equity cushion" as adequate protection in holding:
>
> "While the term 'adequate protection' is not defined in the code, 11 U.S.C. § 361 sets forth three non-exclusive examples of what may constitute adequate protection: 1) periodic cash payments equivalent to decrease in value, 2) an additional or replacement lien on other property, or 3) other relief that provides the indubitable equivalent. *In re Curtis*, 9 B.R. 110, 111-112 (B.Ct.E.D.Penn.1981).

An equity cushion is the classic form of protection for a secured debt, and its existence, standing alone, can provide adequate protection under the code. *In re Interstate Distributing Co., Inc.*, 13 Mont. B.R. 86, 89-90 (D. Mont. 1993) (*citing In re Mellor*, 734 F.2d at 1400).

The evidence in this case shows no equity cushion. The lack of equity cushion, combined with Debtor's failure to seek and obtain authority to use cash collateral before spending $5,930.49 of FIB's cash collateral cannot be ignored by this Court. The Court also cannot ignore the fact that Jonine conceded that she and her husband have been injecting cash into Debtor's business operation for some time. Based upon the evidence presented, this Court could not grant Debtor's motion to use cash collateral.

## CONCLUSIONS OF LAW

1. This Court has original and exclusive jurisdiction of this Chapter 11 bankruptcy case under 28 U.S.C. § 1334(a).

2. FIB's motion to modify stay and motion for adequate protection are core proceedings under 28 U.S.C. § 157(b)(2)(G).

3. FIB satisfied its burden of proof under 11 U.S.C. § 362(d)(1) and § 362(g)(1) by showing Debtor does not have an equity in FIB's security.

4. Debtor failed to satisfy its burden of proof under § 362(d)(1) and § 362(g)(2) to show that relief from the automatic stay should not be granted.

In accordance with the foregoing, the Court will enter a separate order providing as follows:

**IT IS ORDERED** that First Interstate Bank's Motion and Amended Motion for an Order that the Automatic Stay is not Applicable are granted.

**IT IS FURTHER ORDERED** that First Interstate Bank's Motion and Amended Motion to Modify the Stay are granted; and the stay afforded by § 362(a) of the Bankruptcy Code is modified to permit First Interstate Bank to pursue its nonbankruptcy remedies as set forth in the Judgment entered October 18, 2011, by District Judge Mary Jane Knisely in Cause No. DV 11-0549, Montana Thirteenth Judicial District, Yellowstone County.

**IT IS FURTHER ORDERED** that First Interstate Bank's Motion and Amended Motion for Adequate Protection are denied as moot.

**IT IS FURTHER ORDERED** that Debtor's Motion for Use of Cash Collateral filed March 2, 2012, is denied.

BY THE COURT

*/s/ Ralph B. Kirscher*
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana